UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CRIMINAL ACTION NO. 09-31-GFVT

UNITED STATES OF AMERICA,                                                              PLAINTIFF,

**MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION**

BRIAN LEE PATRICK,                                                                      DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

## I. INTRODUCTION

Brian Lee Patrick brings this action pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence. [R. 44]. Consistent with local practice, the matter is before the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the Court recommends that Patrick's motion be denied.

## II. FACTUAL & PROCEDURAL BACKGROUND

Patrick was convicted following his guilty plea to assault resulting in a serious bodily injury in violation of 18 U.S.C. § 113 (a)(6). [R. 40]. On September 20, 2008, at the United States Penitentiary located in McCreary County Kentucky, prison staff reported to a disorder in the 6B housing unit. Once inside, staff members found Brian Lee Patrick violently punching, kicking, and stomping his completely incapacitated cell mate, Robert Smallwood. Prison staff members intervened, but Patrick resisted and continued to beat Smallwood. During the altercation, Patrick elbowed Corrections Officer Anthony Gadberry in the mouth, punched Lieutenant Scott "Tom" Long in the face, and kicked Lieutenant John Liang in the thigh.

Due to the severity of Smallwood's head injuries, he was in a comatose state for several days. Smallwood suffered permanent and potentially life threatening injuries as a result of the

attack.  He had a brain hemorrhage and required artificial breathing and nutrition for numerous days.  Smallwood also suffered extensive fractures to the bones that make up his face.

Judge Gregory Van Tatenhove sentenced Patrick to 96 months imprisonment, to run consecutively to the remainder of his undischarged term of imprisonment. [R. 43].  Judge Van Tatenhove also ordered Patrick to pay $192,960.37 in restitution.  It is from this judgement that Patrick brings this motion to vacate his sentence under 28 U.S.C. § 2255. [R. 44].  In his motion Patrick argues that his counsel, James E. Hibbard, provided ineffective assistance which prevented him from entering into a knowing, intelligent and voluntary plea, by: (1) causing an irretrievable breakdown in the attorney-client relationship, including forcing Patrick to enter a guilty plea by threatening to withdraw; (2) advising Patrick to enter into a guilty plea to a defective indictment; (3) refusing to allow Patrick to review discovery materials; (4) failing to obtain a mental health evaluation; (5) failing to investigate claims surrounding the circumstances of the incident; (6) advising Patrick to enter a plea which contained appellate waivers; and (7) failing to file an appeal or any notice of appeal in the District Court or the Court of Appeals.  All of these errors, he alleges, impaired his ability to enter into a knowing, voluntary and intelligent plea, thus invalidating the plea condition that he waive his right to appeal and collaterally attack his guilty plea and conviction.

### III.  STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a court established by an Act of Congress may move the court which imposed the sentence to vacate, set aside, or correct the sentence.  28 U.S.C. § 2255(a).  To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which has a substantial

2

and injurious effect or influence on the proceedings. Walton v. United States, 165 F.3d 486, 488 (6th Cir. 1999). Additionally, to prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." Id.

### INEFFECTIVE ASSISTANCE OF COUNSEL

The United States Supreme Court's decision in Hill v. Lockhart, 474 U.S. 52 (1985), announced that the test for challenges to guilty pleas based on ineffective assistance of counsel is the two-pronged inquiry of Strickland v. Washington, 466 U.S. 668 (1984). Hill, 474 U.S. at 59; Griffin v. United States, 330 F.3d 733, 737 (6th Cir. 2003). In the context of guilty pleas, the first half of the Strickland standard is nothing more than an inquiry as to whether trial counsel's performance fell below the reasonably accepted professional standard. Id. In other words, the Court must assess whether counsel's performance was constitutionally deficient such that he was not functioning as counsel guaranteed by the Sixth Amendment. Regaldo v. United States, 334 F.3d 520, 524 (6th Cir. 2003). In assessing the attorney's conduct under Strickland's first prong, the Supreme Court instructed that "courts must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct, and judicial scrutiny of counsel's performance must be highly deferential." Id.

The prejudice requirement of the Strickland standard, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. Hill, 474 U.S. at 59. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Id. In many guilty plea

cases, the "prejudice" inquiry will closely resemble the inquiry of the court in reviewing ineffective-assistance challenges to convictions obtained through a jury trial. Id. Instead of trying to predict whether the decisions of the attorney would have affected the outcome of the trial, the court will have to predict whether the defendant would have gone to trial instead of entering a plea agreement. Id. As was explained in Strickland, these predictions of the outcome should be made objectively, without regard for the idiosyncrasies of the particular decision maker. Id. at 60; Strickland, 466 U.S. at 695.

Therefore, in order for Patrick to succeed he must establish that: (1) counsel's representation was so egregious that it fell below the professionally accepted standard; and (2) but for counsel's action he would have opted to go to trial instead of entering the plea agreement. Having determined the appropriate standard of review to apply, the Court now turns to Patrick's claims of ineffective assistance of counsel.

## IV.  ANALYSIS

As mentioned above, Patrick asserts claims of ineffective assistance of counsel to challenge the validity of his guilty plea. However, for the reasons stated none provide him relief and the undersigned will recommend that his motion for habeas relief be denied.

### a. Counsel was Ineffective by Causing an Irretrievable Breakdown in the Attorney Client Relationship

First, Patrick argues that he pled guilty as a result of a breakdown in the attorney-client relationship, and that counsel advised that he would withdraw from representation if Patrick did not enter a guilty plea. [R. 44]. Patrick claims that early on in their relationship he and Hibbard concluded he had a good "self-defense case," except for the fact that he continued to assault the victim after he became unconscious. [Id. at 9]. Patrick advised counsel he had no memory of the

4

assault, but learned of it from conversations with other inmates who were also housed in the same unit. [Id. at 3-4]. His inability to recall the assault was the result of drinking homemade wine, made using great quantities of sugar, in combination with failing to take his mediation for diabetes. Patrick informed his counsel that due to his "blackout" state he did not realize the victim was unconscious. [Id. at 10]. Hibbard believed Patrick was contradicting himself, and saw little possibility of convincing the jury that during the attack Patrick acted in self-defense. However, Hibbard informed Patrick that if he took the stand and told this version of the story he would be obstructing justice and would face a more harsh sentence as a result. [Id. at 14].

Patrick asserts that this threat of withdrawal had a very coercive effect, and all communication between the two ceased at this point, until he was brought to U.S. District Court as a result of Hibbard's Motion to Withdraw. [Id. at 15, 17]. Finally, Hibbard informed Patrick that if he chose to go to trial he would be compelled to file a motion to withdraw as counsel given the inconsistencies in Patrick's account of the incident. At that time, Hibbard then produced a plea agreement and suggested that Patrick should accept the plea bargain. As a result, Patrick argues counsel's assistance was so objectively unreasonable that any subsequent plea was not intelligent, voluntary, or knowing. [Id. at 23]. Patrick states that if his attorney had not made the threats to withdraw then he most certainly would have elected for a trial, and therefore he suffered prejudice as a result of his attorney's ineffective assistance.

In order to succeed upon this claim, Patrick must prove that his relationship with counsel was so lacking that Hibbard's performance consequently fell below an objective standard of reasonableness. Strickland, 466 U.S. at 668. This Court's scrutiny of counsel's performance must be highly deferential, and given the difficulties inherent in making the evaluation, this

5

Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  Id. at 688.  Patrick argues that he and Hibbard had such a breakdown in their relationship that it infringed upon his Sixth Amendment Right to Counsel that is "effective" and "conflict-free." [R. 42-1 at 2].  However, the record in this action contradicts his assertions.

On September 8, 2009, counsel moved for Patrick to be re-arraigned. [R. 19].   On November 4, 2009, counsel moved to withdraw as Patrick's counsel, stating that "irreconcilable differences have arisen between [counsel] and his client relative to the conduct of the defense." [R. 25].  The Court, in response, conducted a hearing on the motion to withdraw. [R. 28].  The hearing, including a portion of the hearing conducted outside the presence of the United States (with consent), reveals that the Court informed Patrick of his right to counsel, confirmed that he did not request new counsel, and that the relationship between Patrick and his attorney was "positive and intact". [R. 28].  Patrick's re-arraignment occurred six days later. [R. 31].  During that proceeding, the following exchange occurred between the Court and Patrick:

> THE COURT: Well, based on the representation of the lawyers, and your responses this morning, Mr. Patrick, I do believe that you're competent to enter a plea fo guilty.
>     Did you receive a copy of the indictment in this case –
>
> THE DEFENDANT:  Yes.
>
> THE COURT: – the charging document? And did you have a chance to read it?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you feel like you've had a sufficient time to discuss that document and discuss this case with Mr. Hibbard?
>
> THE DEFENDANT: Yes. He's been very thorough with me.

6

>THE COURT: Okay. So have you been satisfied with his advice, his counsel, his representation?
>
>THE DEFENDANT: Yes, I have.
>
> * * *
>
>THE COURT: Okay. All right. Well, thanks for clarifying that for the record. Mr. Patrick, before you signed the plea agreement, did you read it?
>
>THE DEFENDANT: Yes.
>
>THE COURT: Okay. And you understand the provisions in the plea agreement?
>
>THE DEFENDANT: Yes.
>
>THE COURT: And you signed it because of the references in the plea agreement to the facts, for example, are true?
>
>THE DEFENDANT: Yes.

[R. 53, Rearraignment, pp. 11, 13-14].

Contrary to Patrick's claims, the record does not reveal a breakdown of the attorney client relationship sufficient to implicate a violation of his Sixth Amendment right to counsel. Although he may have experienced a disagreement with counsel, during a hearing on the issues, he and counsel expressed satisfaction with their working relationship which was found to be intact. In addition, Patrick's re-arraignment occurred six days later, rather than immediately after or during the hearing before the Court. The Sixth Amendment does not guarantee that an attorney and his client will see eye-to-eye on all issues, and decisions that might be considered sound trial strategy do not constitute ineffective assistance of counsel. Michel v. Louisiana, 350 U.S. 91, 101 (1955). In addition, the United States Supreme Court holds that defense counsel does not render ineffective assistance when he informs his client that he would disclose the client's perjury to the court and move to withdraw from representation. Georgia v. McCollum,

505 U.S. 42, 57 (1992); <u>Nix v. Whiteside</u>, 475 U.S. 157, 166 (1986).  Although Patrick and Counsel did not see eye-to-eye on all issues, there is no evidence that a breakdown occurred implicating his right to the effective assistance of counsel.  In conclusion, the record before the Court indicates that counsel's representation of Patrick did not fall below any professionally recognized standard, and Patrick's first claim of ineffective assistance of counsel is without merit.

**b.  Counsel Rendered Ineffective Assistance by Encouraging Patrick to Enter a Guilty Plea Based on a Defective Indictment**

Patrick's second argument is that counsel rendered ineffective assistance by encouraging him to enter a guilty plea based upon a defective indictment. [<u>Id.</u> at 24].  Patrick pled guilty only to the first count charging him with a violation of 18 U.S.C. § 113(a)(6), which makes it a crime to commit an "assault resulting in serious bodily injury" . [<u>Id.</u>].  Patrick now claims that all counts should have required a mental state charged as an essential element of the offense.  Patrick further claims that none of the offenses in the indictment contained such an element, and as a result the indictment was defective.  Consequently, he claims, his counsel was constitutionally ineffective for advising him to enter a guilty plea.

Patrick was convicted under 18 U.S.C. § 113(a)(6), assault involving serious bodily injury. [R.1].  Assault involving serious bodily injury under this section is a general intent crime.  <u>U.S. v. Calbat</u>, 266 F.3d 358, 363 (5th Cir. 2001); <u>United States v. Davis</u>, 237 F.3d 942, 944 (8th Cir. 2001); <u>United States v. Benally</u>, 146 F.3d 1232, 137-38 (10th Cir. 1998).  A specific intent to do harm is not an element of the offense.  <u>Id.</u>  Therefore, even without addressing the question of whether Patrick can show cause and prejudice to excuse any procedural default which might bar consideration of the merits of this claim, this claim is without merit. The crime

of assault involving serious bodily injury under 18 U.S.C. 113(a)(6) given is a general intent crime, requiring no specific intent element. Therefore, the indictment was not defective. Counsel cannot therefore be ineffective for failing to challenge the indictment as argued by Patrick.

### c.  Counsel Rendered Ineffective Assistance by Refusing to Allow Patrick to View Discovery Materials

Patrick's third basis for relief is that Hibbard rendered ineffective assistance by refusing to allow him to review over 2500 pages of discovery materials. Patrick claims he was told that he would be forced to give-up the attorney-client privilege if he were allowed to view any discovery at all. Patrick alleges that the said actions induced him to enter into a guilty plea that was not knowingly, voluntarily, or intelligently made.

On June 1, 2009, the Court entered a protective order addressing the disclosure of certain information. [R. 13]. That Order provided that:

> Defense counsel is ORDERED to maintain only one copy of the disc containing Robert Smallwood's medical records and Bureau of Prisons central file and one additional printed copy of the disc's contents, if counsel chooses. The disc and printed copy shall be kept at all times in the possession and control of defense counsel or his office staff. It is further ORDERED that defense counsel allow the Defendant access to the documents for reading only, and that neither the Defendant, nor any other third party, be allowed to take the disc or documents where they could be introduced into the inmate population or where additional copies could be made. The Defendant's access to Smallwood's medical records and central file shall be supervised at all times to insure that copies are not made, documents are not removed, and documents are not introduced into any inmate population. It is further ORDERED that, upon conclusion of the trial herein, the existing copies be returned to the government.

[R. 13]. Patrick argues that to his knowledge the medical "bills" were not prohibited items, yet Hibbard informed Patrick that while 2500 pages of discovery had been provided, only about 50 pages were available for his review. The documents that Patrick was allowed to review did not

have any relation to the injuries sustained by the victim nor any of the costs incurred.

Patrick wanted access to the victims hospital records as he claims one of the hospital guards told him the victim was faking his symptoms in order to obtain narcotics. Patrick argues the victim was committing "fraud" and causing hospital bills to increase exponentially. Patrick states he pled guilty because he was not allowed to review the discovery from the government, and he felt that there was no way to build a defense with an attorney who would not do any work. Generally, a trial court has discretion to restrict a party's opportunity to inspect and copy evidence. See United States v. Horn, 187 F.3d 781, 792 (8th Cir. 1999). In the instant case, the Court's Order did not restrict access, only possession and reproduction in any form, of materials disclosed by the government. In order to establish a violation of the Defendant's right to disclosure of evidence, it must be demonstrated that there was a reasonable probability that disclosure of the evidence would have changed the outcome of the proceeding. See Strickler v. Greene, 527 U.S. 263, 289 (1999). In this case, Patrick must demonstrate that disclosure of the information would have resulted in a decision not to plead guilty, but to proceed to trial. In order for Patrick to be proven guilty of his charged crime, two elements were required to be proven: First, that he intentionally assaulted the victim, and second that as a result of the assault the victim suffered serious bodily injuries. [R. 53, p. 27]. Although Patrick claims that one of the hospital guards told him the victim was faking his symptoms in order to obtain narcotics, such a claim does not call into question whether the victim suffered serious injuries, as even Patrick admitted that the victim ended up in the hospital with serious injuries.

> I work up at 2:00 in the morning, and we were cellies, cell mates, and we began to make moonshine from the wine, and we distilled it in our cell, and we started drinking at about 7:00 in the morning. And we were arguing a little bit in the cell. We were on a lock-down, and we ended up becoming drunk. And as a result of

me attacking him, he ended up in the hospital with serious injuries.

[R. 53]. The basis for Patrick's argument is what was allegedly relayed by a guard. However, Patrick admits that he seriously injured the victim during statements to the Court. He fails to present any evidence to contradict counsel, who states that he reviewed the 2500 pages of discovery in question, and is of the professional opinion that the documents contained nothing that would be of assistance to Patrick's case. Furthermore, counsel argues the time that would have been required to supervise Patrick in reviewing the materials would be a waste of resources without any benefit. It is for this reason that the Court finds that Patrick's claim fails to show that rather than enter a guilty plea, he would have proceeded to trial. Patrick's third claim of ineffective assistance of counsel is without merit.

**d. Counsel Rendered Ineffective Assistance by Failing to Obtain a Mental Health Evaluation of Patrick and Encouraging Him to Enter a Plea that Waived His Right to Litigate Such Factors**

Patrick's fourth claim is that Hibbard rendered ineffective assistance of counsel by failing to obtain a mental health evaluation and encouraging him to enter into a plea agreement that waived his right to litigate such factors. Patrick informed Hibbard that he suffered from a history of diabetes induced blackouts and violent episodes and also psychological impairments that required medication. Furthermore, Patrick had not taken any of his prescribed medications on the day of the offense and therefore had no recollection of the events.

Patrick argues that having knowledge of this, Hibbard still advised him to enter into a plea agreement that waived his rights to present mitigating evidence in order to receive a decrease in the offense level or sentence. Patrick claims Hibbard should have immediately had him examined to see what effect not taking his medications on the day of the attack had upon his

11

diabetes and mental health impairments. According to counsel there was nothing that occurred during his representation that indicated any need for a mental health evaluation. [R. 56-1 at 6]. Furthermore, it was only after the receipt of the Presentence Report that Patrick requested an evaluation at which point one was conducted.

Patrick was evaluated from April 20, 2010 through May 10, 2010 at the Bureau of Prison's U.S. Medical Center in Springfield, Missouri. [R. 56 at 7; citing Presentence Report at 25A]. During the course of the evaluation, it was determined that Patrick never exhibited any symptoms of a mental illness prior to 2008, and displayed no evidence of mental illness during his evaluation. [R. 36]. His volatility, the report reflects "is not the result of a mental illness, but rather a result of his personality." [R. 36]. Specifically, the evaluator was asked to address whether Patrick suffered from a reduced mental capacity which significantly contributed to the offense for which he pled guilty, and the evaluator found that any reduced mental capacity at the time of the offense would have been caused by the voluntary consumption of alcohol. [R. 36]. Otherwise, he had never exhibited any signs or symptoms of a mental illness before the incident. [R. 36].

In this action, Patrick presents no evidence that a mental evaluation would have been beneficial. Although he claims to suffer from pre-existing mental health problems, neither the evaluator nor his counsel provides a foundation for these allegations. As counsel state, there was no indication a mental health evaluation was necessary. Furthermore, counsel claims that Patrick did not request a mental evaluation until after the receipt of the Presentence Report at which point an evaluation was immediately requested and conducted. [R. 56-1 at 6]. Given that counsel immediately had an evaluation conducted upon what he perceived as Patrick's first

12

request, this Court must indulge the strong presumption that counsel's conduct was reasonable. In addition, considering the evaluator's opinions that he displayed no evidence of mental illness during his evaluation, and no reason to conclude that he suffered a reduced mental capacity at the time of the assault, there is nothing to indicate that counsel's representation fell below the accepted standard, and Patrick's fourth claim of ineffective assistance of counsel is without merit.

### e.  Counsel Rendered Ineffective Assistance by Failing to Investigate Claims

Patrick's fifth claim is that Hibbard rendered ineffective assistance for refusing to investigate claims that: (1) Patrick committed the offense conduct while in a diabetic induced coma and that alcohol was merely secondary to this factor; (2) Patrick had not received his medication for 12-24 hours prior to the offense conduct; and (3) subsequent to the offense conduct several prisoners stated that the victim had threatened to harm Patrick in conversations with those individuals and could be heard through closed cells threatening and attacking him. [Id at 54]. Patrick claims that Hibbard's failure to investigate caused him to enter into a guilty plea not knowingly, intelligently, or voluntarily made.

Patrick argues, that had Hibbard obtained a psychiatric evaluation, it would have been obvious that his actions would be defensible at trial. Patrick claims that had his counsel done so, he would have either gone to trial or he would have been able to negotiate a plea agreement with a substantially lower punishment. Patrick alleges that if his counsel had not provided ineffective assistance the outcome of his case would have been different.

> A defendant attacking his lawyer's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" (citation omitted). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually

13

>unchallengeable . . . ." (Citation omitted).  However, a failure to investigate, especially as to key evidence, must be supported by a reasoned and deliberate determination that investigation was not warranted.  As the Strickland Court opined,  "Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." (Citations omitted).

O'Hara v. Wiggginton, 24 F.3d 823, 828 (6th Cir. 1994).

In this particular case, it is important to recognize that Patrick's argument that he suffered from a diminished mental capacity whether due to voluntary intoxication or other cause, would not constitute a defense to the general intent crime charged. See United States v. Veach, 455 F.3d 628, 631 (6th Cir. 2006).  Therefore, counsel cannot be found ineffective because he did not argue diminished capacity.  In addition, Patrick's claims that other inmates overheard the victim threaten Patrick, cannot rise to the level of presenting a defense of self-defense, as the only witnesses to the altercation were "corrections officers, a significant number of whom observed at least the 'end' of the fight.  All of the officers who were able to see into the cell stated that upon their arrival Mr. Smallwood was on the floor apparently unconscious and that Mr. Patrick continued to kick him in the head until they were able to gain entry into the cell."  [R. 56-1 at 3].

Simply, Patrick presents no viable argument why counsel was ineffective for failing to argue diminished capacity or self-defense.  Based upon the evidence before the Court, counsel's actions were reasonable, not inconsistent with his obligations under Strickland, and these claims are without merit.

### f. Counsel Rendered Ineffective Assistance by Advising Patrick to Enter a Plea Agreement Which Forfeited Rights of Appeal

Patrick sixth claim alleges that Hibbard advised him to enter into a plea agreement

14

forfeiting his rights to appeal or collaterally attack his guilty plea and conviction based on claims of ineffective assistance of counsel. Patrick claims that Hibbard was ineffective for doing so. Although Patrick asserts that his counsel was ineffective for advising him to enter a plea agreement containing such a waiver, it is noteworthy, however, that nowhere does Patrick claim that had he been properly advised, he would have refused to enter the plea agreement and insisted on going to trial. He does not challenge the validity of the plea in order to set it aside and proceed to trial, rather, he challenges the validity of the plea in order to achieve judicial review of claims presented in his motion to vacate.

In considering Patrick's claim, the Court's first task is to determine whether counsel's conduct fell below an objective standard of reasonableness. Strickland, 466 U.S. at 689. "Judicial scrutiny of counsel's performance must be highly deferential," and "because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. In the instant action, there is no representation that the government extended terms for a plea that were not communicated to Patrick by counsel; nor does Patrick assert that had he understood the effect of the offered terms, he would have rejected the plea agreement and proceeded to trial. In addition, Patrick includes in his filings a copy of correspondence from Hibbard, detailing discussions regarding the proposed plea agreement and the subject waiver. [R. 44, p. 65, & Ex. 2, p 14]. Such advice does not misrepresent the effect of Patrick's right to challenge the validity of the waiver, and the Court cannot find that counsel's representation fell below an objective standard of reasonableness. In addition, in order to establish prejudice and satisfy the second prong of the Strickland *analysis in the context of a guilty plea*, the petitioner "must show that

15

there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); accord Griffin v. United States, 330 F.3d 733, 737 (6th Cir. 2003); O'Hara, 24 F.3d at 828. Patrick makes no such claim.

The only rights that were waived by Patrick, were his right to appeal and collaterally attack the guilty plea and conviction. It is well settled that a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement. United States v. Calderon, 338 F.3d 197, 200 (6th Cir. 2004); United States v. Fleming, 239 F.3d 761, 763-64 (6th Cir. 2001). Furthermore, the Sixth Circuit has held that the right to collaterally attack a conviction and sentence may be waived in a guilty plea, so long as the waiver is "informed and voluntary." Watson v. United States, 165 F.36 486, 489 (6th Cir. 1999).

The plea agreement in this matter contained a provision stating: "The defendant waives the right to appeal and the right to attack collaterally the guilty plea and conviction. He reserves the right to appeal any sentence, including any order of restitution." [R. 29]. During the plea colloquy in this matter, the following exchange occurred:

> THE COURT: All right. There's a part of your plea agreement, and I'm sure Mr. Hibbard's gone over this with you, but it's at paragraph 8, and it's about your waiver of your appeal rights. You've waived your right to attack collaterally your guilty plea and your conviction. Of course, you've reserved your right to appeal the sentence that I impose, including any order of restitution.
> Do you recall discussing that provision with Mr. Hibbard?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. I mean, do you understand the consequence of waiving your appeal rights?
>
> THE DEFENDANT: That would be an appeal to a 2255?

16

>THE COURT: In part it would be.
>
>THE DEFENDANT: Yes. Yes.
>
>THE COURT: Yeah. Do you have any questions about that?
>
>THE DEFENDANT: No. I understand it.
>
>THE COURT: Okay. Mr. Hibbard, do you think that your client understands the consequences of waiving those appeal rights?
>
>MR. HIBBARD: I believe he does, your Honor. And I was just reassuring him that he retains all those rights with regard to his sentence.

[R. 53, Rearraignment, pp. 25-26].

The exchange between Patrick and the Court demonstrates his understanding of the rights waived as part of his plea agreement, as well as the legal affect of the waiver. Patrick voiced an understanding that he waived all rights except for his right to appeal or collaterally attack the sentence. There is no indication in the record, or in Patrick's petition, that he was unaware he was waiving such rights, and the Sixth Circuit holds that a trial court's proper plea colloquy cures any misunderstanding that a defendant may have about the consequences of the plea. Ramos v. Rogers, 170 F.3d 560, 565 (6th Cir. 1999). Because the record indicates that Patrick entered the waiver in a knowing, intelligent and voluntary fashion, this claim is without merit.

### g.  Counsel Rendered Ineffective Assistance By Not Filing an Appeal or Notice of Appeal

Patrick's final claim alleges that Hibbard rendered ineffective assistance when he did not file any appeal. In considering his claim of ineffective assistance of counsel, the Court is instructed by Roe v. Flores-Ortega, 528 U.S. 470 (2000); see also, Johnson v. United States, 364 F. App'x 972, *3 (6th Cir. 2010). In Roe, the United States Supreme Court discussed a three step for analysis for such a claim: (1) the court must determine whether the defendant gave counsel

17

express instructions regarding an appeal; (2) if the court finds that the defendant did not provide express instructions, then we must determine whether counsel consulted with the defendant about an appeal; or (3) if there was no consultation, the we must decide whether the failure to consult was objectively unreasonable. [Id.] Normally, a court should examine a claim of ineffective assistance of counsel based on a failure to file an appeal under the two-pronged Strickland test, by asking whether counsel consulted with the defendant about the benefits and drawbacks of bringing an appeal. Roe, 528 U.S. at 478. If a consultation occurred, then the court should examine whether the defendant gave express instructions to counsel; and if no consultation occurred, it should determine whether the failure to consult, by itself, is indicative of deficient performance. Id.; Regalado v. United States, 334 F.3d 520, 525 (6th Cir. 2003).

Patrick alleges only (1) that he "expected" that a notice of appeal would be filed and that counsel would be appointed to represent him, and (2) that he preserved his appellate rights as part of the plea negotiations. [R. 56 at 9-10]. Nowhere in Patrick's pleadings does he claim that counsel either failed to consult with him regarding his right to appeal, or disregarded instructions to file an appeal on his behalf. Patrick merely alleges that approximately two months after sentencing he asked his family to call the Sixth Circuit Court of Appeals to learn the identity of his appellate counsel. Patrick's family reported back to him several weeks later that no counsel had been appointed and no notice of appeal had been filed.

In the present case, Patrick does not assert that his attorney failed to consult with him about filing an appeal, or that, following consultation, counsel failed to file an appeal as

18

instructed. In fact, counsel represents that he consulted with Patrick and this evidence is not contradicted by Patrick. [R. 56-1]. Counsel inquired if Patrick wanted to pursue an appeal, but the answer was "no". Therefore, this Court concludes that there is no allegation or evidence that counsel's conduct fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. Therefore, his claim for relief is without merit.

## VI. CONCLUSION

For the reasons set forth above, it is recommended that Patrick's Motion to Vacate, Set Aside, or Correct Sentence [R. 44] be DENIED.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation. Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Thomas v. Ann, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller V. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

Signed August 28, 2012



Signed By:
Edward B. Atkins   EBA
United States Magistrate Judge